IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| SNC-LAVALIN CONSTRUCTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 8:19-cv-00873-GJH |
| v. | ) | |
| | ) | |
| TOKIO MARINE KILN INSURANCE L, LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SNC-LAVALIN CONSTRUCTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 8:19-cv-01510-GJH |
| v. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, *et al.,* | ) | Hon. George J. Hazel |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Robert L. Hebb (Fed. Bar # 23425)
Richard J. Medoff (Fed. Bar # 19608)
Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400
Baltimore, MD 21201

Jeffrey S. Weinstein (*Pro Hac Vice*)
Bruce Kaliner (*Pro Hac Vice*)
Pejman Steven Nassi (*Pro Hac Vice*)
Maegan B. McAdam (*Pro Hac Vice*)
Mound Cotton Wollan & Greengrass LLP
One New York Plaza, 44th Floor
New York, NY 10004

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I. PLAINTIFF'S MOTION IS INCORRECT AND MISLEADING REGARDING
THE APPLICABLE STANDARD FOR DETERMINING THE CITIZENSHIP OF
FOREIGN ENTITIES............................................................................................................ 5

II. UK PRIVATE LIMITED COMPANIES ........................................................................ 7

    A. The Lloyd's Syndicates Have Identified the Citizenship of Their Members ...... 7

    B. Tokio Marine, Hardy Underwriting Limited and Talbot 2002 Underwriting
    Capital Limited are UK private limited companies that are treated as
    corporations for purposes of diversity, and there is no legitimate question or
    doubt as to the diversity of these three companies .................................................... 11

III. MUTUAL INSURANCE COMPANIES ...................................................................... 14

    A. Jurisdiction over  mutual insurance companies is not based on the
    citizenship of their members.................................................................................... 14

    B. AEGIS and EIM should still be treated as corporations for purposes of
    diversity notwithstanding that they are foreign entities, and there is no
    legitimate question or doubt as to the diversity of these three companies................. 16

    C. AEGIS disclosed New Jersey as its principal place of business because
    AEGIS conducts all of its business and operations in the United States through
    a wholly owned subsidiary whose principal place of business is in New Jersey ...... 19

IV. SOCIETAS EUROPAEA .............................................................................................. 20

CONCLUSION..................................................................................................................... 24

## INTRODUCTION

Defendants submit this Memorandum of Law in opposition to Plaintiff's Motion to Remand (ECF No. 25, 25-1) (the "Motion").[1] As set forth below, Defendants have met their burden to establish that there is complete diversity of citizenship between Plaintiff and Defendants, in accordance with 28 U.S.C. § 1332(a), and accordingly, this matter should proceed in this Court.

Plaintiff's arguments in support of its Motion to Remand are premised on speculative and unfounded hypotheticals bearing little, if any, relation to the facts. Further obfuscating the uncontroverted facts and straightforward legal analysis is Plaintiff's reliance on case law from other jurisdictions involving corporate forms and other issues not implicated in this action. However, the diversity analysis in this case is actually quite simple and, furthermore, Defendants have provided all necessary information in their Notice of Removal (ECF No. 1) and Corporate Disclosures (ECF No. 15-21) to avail themselves of federal court jurisdiction.

The essential facts relevant to this Court's diversity analysis, which are supported by case law, Defendants' pleadings, and sworn declarations provided in support of Defendants' Opposition to Plaintiff's Motion to Remand, are as follows:

- Plaintiff: Plaintiff is a Delaware corporation with its principal place of business in Washington State. Pl. Motion, p. 3. The parties do not dispute Plaintiff's citizenship for purposes of diversity.

---

[1] As used herein, references to the "Motion" refer to Plaintiff's Memorandum in Support of its Motion to Remand (ECF No. 25-1).

- <u>Allianz Global Risks US Insurance Company ("Allianz")</u>: Allianz is an Illinois corporation with its principal place of business in Chicago, Illinois. ECF No. 16. Plaintiff's Motion does not dispute that Allianz is completely diversity from Plaintiff.

- <u>Tokio Marine Kiln Insurance Limited ("Tokio Marine")</u>: Tokio Marine is a UK private limited company. *See* ECF No. 21. A UK private limited company is a "corporation" for the purpose of diversity jurisdiction and, therefore, its citizenship is determined by its place of incorporation and its principal place of business. Tokio Marine is incorporated and registered in England and Wales with its principal place of business in London, England. (*Id.*) Thus, Tokio Marine is completely diverse from Plaintiff.

- <u>Lloyd's Syndicate Talbot Validus Group (TAL 1183) ("Syndicate 1183")</u>: Diversity jurisdiction over a syndicate turns on the citizenship of its members. Pl. Motion, p. 13-14. Syndicate 1183 had only one member during the relevant time period: Talbot 2002 Underwriting Capital Limited. ECF No. 18. Talbot 2002 Underwriting Capital Limited is a UK private limited company. As explained above, a UK private limited company is a "corporation" for the purpose of diversity jurisdiction and, therefore, its citizenship is determined by its place of incorporation and its principal place of business. Talbot 2002 Underwriting Capital Limited is incorporated and registered in England and Wales with its principal place of business in London, England. *Id.* Thus, Syndicate 1183 is completely diverse form Plaintiff.

- <u>Lloyd's Syndicate 382 CNA Hardy ("Syndicate 382")</u>: Diversity jurisdiction over a syndicate turns on the citizenship of its members. Pl. Motion, p. 13-14. Syndicate 382 also has only one member: Hardy Underwriting Limited. ECF No. 19. Hardy Underwriting Limited is UK private limited company. Again, a UK private limited

company is a "corporation" for the purpose of diversity jurisdiction and, therefore, its citizenship is determined by its place of incorporation and its principal place of business. Hardy Underwriting Limited is incorporated and registered in England and Wales with its principal place of business in London, England. *Id.* Thus, Syndicate 382 is completely diverse form Plaintiff.

- Associated Electric & Gas Insurance Services Limited ("AEGIS"): AEGIS is a mutual insurance company. Pl. Motion, p. 12. Mutual insurance companies are "corporations" for the purpose of diversity jurisdiction. AEGIS's status as a *foreign* mutual insurance company is inconsequential since it has all the attributes of a US corporation. AEGIS must therefore be treated as a corporation and its citizenship be determined by its place of incorporation and its principal place of business. AEGIS is incorporated in Bermuda and conducts all of its business and operations in the United States through a wholly owned subsidiary whose principal place of business is New Jersey. ECF No. 15. Thus, AEGIS is completely diverse from Plaintiff.

- Energy Insurance Mutual Limited ("EIM"): EIM is also a mutual insurance company (Pl. Motion, p. 12) whose status as a *foreign* mutual insurance company is inconsequential for diversity purposes because it has all the attributes of a US corporation. Accordingly, EIM must also be treated as a corporation and its citizenship should be determined by its place of incorporation and its principal place of business. EIM is incorporated in Barbados with its principal place of business in Florida. ECF No. 17. Thus, EIM is completely diverse from Plaintiff.

- Starstone Insurance (SE) f/k/a Torus Insurance (UK) Limited ("Starstone"): Starstone is a Societas Europaea. A Societas Europaea is a "corporation" for the purpose of diversity

jurisdiction. It is likewise immaterial that Starstone is a *foreign* entity since it has all the attributes of a US corporation. Therefore, its citizenship is determined by its place of incorporation and its principal place of business. Starstone is incorporated under the corporate law of the European Union, is registered in Lichtenstein, and had its principal place of business in London, England, until 2017, when it moved to Schann, Liechtenstein. *See* ECF No 20. Thus, Starstone is completely diverse from Plaintiff.

Federal courts in the Fourth Circuit and elsewhere have correctly treated insurance companies with the same features as the defendant companies as corporations for diversity purposes, including several cases involving the same companies. Defendants respectfully submit that this Court should abide by the overwhelming weight of applicable precedent and deny Plaintiff's Motion to Remand because each Defendant has clearly set forth its citizenship status and met its burden to demonstrate complete diversity.

## LEGAL STANDARD

The Fourth Circuit Court of Appeals has held that "[s]ection 1446(a) requires that a Notice of Removal contain only 'a short and plain statement of the grounds for removal' and that it be 'signed pursuant to Rule 11.'" *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (quoting the Supreme Court's discussion of notice pleadings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court in *Ellenberg* went on to add that "[w]hile a notice of removal is not a pleading as defined by Federal Rule of Civil Procedure 7(a), this language in § 1446(a) is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.*

Thus, the burden of showing that removal jurisdiction is proper "is no greater than is required to establish federal jurisdiction as alleged in a complaint." *Id.* (citing *In re Blackwater*

*Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)). And in determining whether subject matter jurisdiction in fact exists, this Court "may consider affidavits and other extrinsic information…." *Saval v. BL Ltd.*, 710 F.2d 1027, 1029 at n.2 (4th Cir. 1983).

## ARGUMENT

**I.**   **PLAINTIFF'S MOTION IS INCORRECT AND MISLEADING REGARDING THE APPLICABLE STANDARD FOR DETERMINING THE CITIZENSHIP OF FOREIGN ENTITIES**

While not mentioned in Plaintiff's Motion, there is a Circuit-split over the applicable standard for determining the citizenship of foreign entities for purposes of diversity. The Circuit split on this issue has been explained as follows:

> The Fifth, Seventh, and Ninth Circuits are the only circuit courts that have discussed how to determine the citizenship of a foreign-country business entity for diversity purposes. Both the Fifth and the Ninth Circuits use an approach that focuses on whether the country of the entity's formation treats the entity as a "juridical person." … a juridical person is an "entity that can own property, make contracts, transact business, and litigate in its own name …." … By contrast, the Seventh Circuit's most recent cases use a comparison approach in which the court determines citizenship of the foreign-country entity by comparing it to American business entities to determine which entity it most resembles.

Elisabeth C. Butler, *Diversity Jurisdiction and Juridical Persons: Determining the Citizenship of Foreign-Country Business Entities*, 97 Tex. L. Rev. 193, 201 (2018) (footnotes omitted).

Plaintiff misleadingly suggests that the Fourth Circuit has adopted the Seventh Circuit's approach when, in fact, it has expressly and unequivocally refused to so. Plaintiff cites *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211 (4th Cir. 2019) as "recognizing the 'approach that involves examining the foreign entity's substantive features and comparing them to the characteristic features of an American corporation.'" *See* Pl.'s Motion, p. 19 (quoting *Hawkins*, 935 F.3d at 224).

However, rather than adopting the Seventh Circuit's approach as the applicable analysis here, as Plaintiff's Motion suggests, what the *Hawkins* Court said – and which Plaintiff's Motion

5

omitted – was that *"the Seventh Circuit has adopted* an approach that involves examining the foreign entity's substantive features and comparing them to the characteristic features of an American corporation." *Hawkins,* 935 F.3d at 224 (emphasis added). The *Hawkins* Court went on to further clarify that the Fourth Circuit has *"not espoused the Seventh Circuit's approach." Id.* (emphasis added). This perhaps explains why Plaintiff unduly relies on cases from other Circuits in lieu of precedent from the Fourth Circuit that are directly on point.

In contrast to the Seventh Circuit's approach, several other Circuits have adopted the "Supreme Court's approach," which originated from the Supreme Court's holding in *Puerto Rico v. Russell & Co.,* 288 U.S. 476 (1933). As one Federal District Court from this Circuit recently explained:

> The [Supreme] Court has held that a foreign business entity is subject to suit in the United States so long as it is a "juridical person." *People of Puerto Rico v. Russell & Co.,* 288 U.S. 476, 480–81 (1933). In *Russell,* the Court held that a Puerto Rican *sociedad en comandita* is a Puerto Rican citizen for diversity purposes. *Id.* As a *sociedad* was formed differently than American business entities, the *sociedad* was simply considered a Puerto Rican citizen. *Id.*
>
> During the ensuing decades, the Seventh Circuit developed a multi-factor test to determine whether a foreign business entity is equivalent to an American corporation for diversity purposes. *Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003). The test requires a court to evaluate whether the foreign entity has the same or similar characteristics to a corporation, such as if the entity has "perpetual existence, [and is] governed by a Board of Directors, able to issue tradable shares ... and treated as independent of its equity investors—who are neither taxable on its profits nor liable for its debts." *Id.*
>
> *Recently, the Fourth Circuit addressed this question of determining citizenship of a foreign entity* in *Hawkins v. i-TV Digitalis Tavkozlesi zrt.* 935 F.3d 211, 223–25 (4th Cir. 2019). The court considered how to treat a Hungarian business entity for diversity purposes. *Id.* at 226. *While the court examined both the Supreme Court's and Seventh Circuit's approaches, the court did not adopt either and expressly left the question open. Id.*

*Brink's Co. v. Chubb European Grp. Ltd.,* No. 3:20-CV-520-HEH, 2020 WL 6829870, at *5 (E.D. Va. Nov. 20, 2020) (emphasis added).

6

Plaintiff's Motion only identifies and applies the Seventh Circuit approach. However, the Supreme Court's decision in *Russell* must not be ignored, as the Supreme Court has subsequently reaffirmed that *Russell* has "relevance" to the issue of how to analyze the citizenship of business entities for diversity purposes. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 190 n.2 (1990). Moreover, Supreme Court precedent is binding on this Court, while Seventh Circuit precedent is not.

That said, even assuming *arguendo* that the approach adopted by the Seventh Circuit applied here, Defendants would still meet their burden of establishing diversity. The foreign Defendants (or—with respect to Syndicate 1183 and Syndicate 382—their members) are either UK private limited companies, mutual insurance companies, or a Societas Europaea. As set forth below, these three business types have the features of an American corporation and their own legal personality.

## II.    UK PRIVATE LIMITED COMPANIES

The sole members of Defendants Syndicate 1183 and Syndicate 382 are private limited companies. *See* **Exhibit A,** Declaration of Philip Sanders Decl. ("Sanders Decl."), ¶ 7; **Exhibit B,** Declaration of Martin Paul ("Paul Decl.), ¶ 6. Furthermore, Defendant Tokio Marine is a private limited company. ECF No. 21.

### A.   The Lloyd's Syndicates Have Identified the Citizenship of Their Members

Two of the four underwriters that severally subscribe to Policy No. B0507P15UC2310, one of the policies at issue in this litigation, are Syndicate 1183 and Syndicate 382 (collectively, the "Syndicates").

Defendants do not dispute that the Syndicates are unincorporated and, therefore, diversity jurisdiction over these Syndicates turns on the citizenship of their members (also referred to as

7

"Names"). *See* Pl.'s Motion, p. 13-14 (citing *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1089 (11th Cir. 2010)). Generally, a syndicate may be comprised of individuals and/or corporations. *See Corfield v. Dallas Glen Hills LP,* 355 F.3d 853, 858 (5th Cir. 2003).

Here, neither Syndicate 1183 nor Syndicate 382 has members or "Names" that are individuals. *See* Ex. A (Sanders Decl.), ¶ 6; Ex. B (Paul Decl.), ¶ 7. The Syndicates each have only one corporate member:[2] Syndicate 1183's sole member for the 2015 year of account is corporate member Talbot 2002 Underwriting Capital Limited. Ex. A (Sanders Decl.), ¶ 6. Syndicate 382's sole member is corporate member Hardy Underwriting Limited. Ex. B (Paul Decl.), ¶ 6.

Defendants identified and disclosed the Syndicates' members in their Notice of Removal (ECF No. 1, ¶¶ 16-17) and Corporate Disclosures. ECF Nos. 18-19. Thus, Defendants have clearly identified all members of the Syndicates. Defendant's Notice of Removal and Corporate Disclosures further stated that Talbot 2002 Underwriting Capital Limited and Hardy Underwriting Limited are incorporated and registered in England and Wales, with their principal place of business in London, England. ECF No. 1, ¶¶ 16-17, ECF Nos. 18-19; *see also* Ex. A (Sanders Decl.), ¶ 7; Ex. B (Paul Decl.), ¶ 6. Accordingly, Defendants have met their burden of proving that the Syndicates are diverse from Plaintiff, which is "a Delaware corporation with its principal place of business in Washington State." Pl. Motion at 3 (citing ECF No. 8, ¶ 1).

But rather than focusing on the insurance companies involved in this case and the facts at

---

[2] This is unsurprising as it is now common for corporate members, rather than individual members, to dominate the membership of Lloyd's syndicates. *See* Aon UK Limited, *Lloyd's Update: Redefining the Future*, September 2019, p. 7 (*available at* http://thoughtleadership.aon.com/Documents/20190904-lloyds-update.pdf) (explaining that "[t]here are now 1,731 corporate members operating on a limited liability basis and 225 high net worth individuals or 'Names' underwriting with unlimited liability. The latter status confers tax advantages, but no new members have been admitted on this basis since March 2003.").

issue (which are generally straightforward), Plaintiff invokes unfounded hypotheticals to raise doubt about Defendants' corporate standing and state of citizenship. For instance, Plaintiff asserts that "each Syndicate *can* have hundreds of thousands of names that are located throughout the world" (*see* Pl. Motion, p. 14) (emphasis added) or that the "probability of [destroying diversity] increases significantly if a Name itself is an unincorporated association." *Id.*

Plaintiff even argues that because Syndicate 382's Corporate Disclosure identifies Hardy Underwriting Limited as the corporate member, this somehow "begs the question whether Syndicate 382 has additional names, including individuals, partnerships, or unincorporated associations." *Id.*, p. 16. Plaintiff does not offer any support for its assertions in this regard, as none exists.

With respect to this matter, the Syndicates each have only one corporate member, and those members are not unincorporated associations. Each Syndicates' member is a private limited company (which, as discussed *infra* in Point II.B., are afforded the same treatment as an American corporation for diversity purposes), incorporated in England and Wales, with their principal place of business in London, England.  *See* Ex. A (Sanders Decl.), ¶ 6, Ex. B (Martin Decl.), ¶ 6.

Plaintiff's reliance on cases such as *Preston Giuliano Cap. Partners LLC v. Underwriters at Lloyd's London,* No. 2:18-cv-000531, 2018 WL 4178720 (M.D. Fla. Aug. 31, 2018) is misplaced. In *Preston Giuliano*, defendants identified twenty-five syndicates in their Notice of Removal, including Syndicate 1183, (*see* Ex. B to Pl. Motion), but failed to identify the citizenship of their members. **Exhibit C.** The court provided the defendants in that case an opportunity to supplement their disclosure, but remanded the case when defendants failed to do

so with sufficient particularity with regard to a number of the carriers. *See* Ex. C to Pl. Motion. Neither the court's order nor any other document cited to by Plaintiff supports Plaintiff's allegation that Syndicate 1183 could not "prove the diversity of its member names" in this matter. *See* Pl. Motion, p. 17.

Nevertheless, that issue is irrelevant here because Defendants' Notice of Removal identified Syndicate 1183's sole member (Talbot 2002 Underwriting Capital Limited) and stated that member's place of citizenship (incorporated in England and Wales with its principal place of business in London). *See* ECF No. 1. And while Syndicate 382 was not a defendant in the *Preston Giuliano* matter, Defendants note that their Notice of Removal also identified Syndicate 382's sole member (Hardy Underwriting Limited) and stated that member's place of citizenship (incorporated in England and Wales with its principal place of business in London). *Id.*

Here, as set forth in the Declarations of Philip Sanders and Martin Paul, the only members of the Syndicates are Talbot 2002 Underwriting Capital Limited and Hardy Underwriting Limited. *See* Ex. A (Sanders Decl.), ¶ 6; Ex. B (Paul Decl.) ¶¶ 6-7. These two members are diverse from Plaintiff as they are both incorporated in England and Wales and have a principal place of business in London. *See* Ex. A (Sanders Decl.), ¶ 7; Ex. B (Paul Decl.) ¶¶ 6-7. The Syndicates do not have any other members or Names. *See* Ex. A (Sanders Decl.), ¶ 6; Ex. B (Paul Decl.) ¶¶ 6-7. There is no merit to Plaintiff's hypothetical speculation to the contrary, and there is no reasonable doubt that complete diversity exists here.

The Syndicates further disclosed those entities that "may have a financial interest in the outcome of this litigation" in their Corporate Disclosures pursuant to Maryland Local Rule 103.3. However, being a parent company or other affiliate of a corporate party (and, therefore, having a "financial interest in the outcome of this litigation") is not analogous to being a

"member" of the syndicate. Thus, the citizenship of those entities with a "financial interest" in this litigation is immaterial—unless they are also a member of the syndicate which, in this case, they are not. *See Hillen v. Lloyd's London,* 1:18-cv-112, 2018 WL 10501628, at *2 (E.D. Va. March 26, 2018) (citizenship of the syndicate is determined by looking to the citizenship of the syndicate's member Names).

> **B.      Tokio Marine, Hardy Underwriting Limited and Talbot 2002 Underwriting Capital Limited are UK private limited companies that are treated as corporations for purposes of diversity, and there is no legitimate question or doubt as to the diversity of these three companies.**

As set forth above, Talbot 2002 Underwriting Capital Limited (the sole member of Syndicate 1183) and Hardy Underwriting Limited (the sole member of Syndicate 382) are UK private limited companies. *See* Ex. A (Sanders Decl.), ¶ 7; Ex. B (Paul Decl.) ¶ 6. Additionally, Defendant Tokio Marine is a private limited company. ECF No. 18. Plaintiff does not dispute that these entities are UK private limited companies,[3] yet it presents an argument that is premised on cases outside the Fourth Circuit, addressing other types of foreign entities, to suggest that it is unclear or debatable how UK private limited companies are treated for diversity purposes. *See* Pl. Motion at 18-20.

Plaintiff does not cite any cases where a UK private limited company was found *not* to be analogous to, and treated like, an American corporation for purposes of diversity. And this is for good reason. Numerous cases from different federal courts have uniformly and continually regarded UK private limited companies as "corporations" for the exercise of diversity

---

[3] *See, e.g.,* Pl. Motion at p. 20 (acknowledging that "Tokio Marine and the various members of the Syndicates" are identified as "UK private limited companies"); copies of the entries for Tokio Marine Kiln Insurance Limited, Hardy Underwriting Limited, and Talbot 2002 Underwriting Capital Limited from Companies House, the UK's registrar of companies, *see* **Exhibits D, E, F** (identifying each as "Company type: Private limited Company"); Notice of Removal (ECF No. 1) at ¶¶ 16-18; Corporate Disclosure for Syndicate 382 (ECF No. 19); Corporate Disclosure for Syndicate 1183 (ECF No. 18); Corporate Disclosure for Tokio Marine (ECF No. 21); Ex. A (Sanders Decl.), at ¶ 7; Ex. B (Paul Decl.), ¶ 6.

jurisdiction. In fact, the most recent example comes from a Federal District Court in this Circuit, *Brink's Co. v. Chubb European Grp. Ltd.*, No. 3:20-CV-520-HEH, 2020 WL 6829870 (E.D. Va. Nov. 20, 2020). The court in *Brink's Co.* summarized the salient facts and issue before it as follows:

> Lloyd's syndicates comprised of member Names structured as U.K. private limited companies. Defendants allege in the Notice of Removal that those Names are all organized under the laws of the United Kingdom with their principal places of business in the United Kingdom. The parties dispute whether a private limited company should be treated as a corporation or if the citizenship of all the members or stakeholders must be alleged for diversity purposes.

*Id.* at *5. The *Brink's Co.* court drew upon the weight of authority and concluded that a U.K. private limited company should be treated like an American corporation for diversity purposes, reasoning as follows:

> Indeed, *many courts do simply state that a U.K. private limited company is treated as an American corporation for diversity purposes.* Nearly a dozen courts have presumed a private limited company is sufficiently similar to an American corporation to be treated as such for diversity purposes.[1] [citing cases in footnote]. Even so, *a private limited company is a juridical person, like a corporation, as it has its own legal personality with various registration and reporting requirements. See Russell*, 288 U.S. at 480–81; Setting *up a Private Limited Company*, START UP LOANS CO. https://www.startuploans-.co.uk/business-advice/what-is-private-limited-company/ (last visited Nov. 12, 2020). *Following the lead of many sister courts, the Court finds that a U.K. private limited company is an analog to an American corporation. Thus, Defendants need only to demonstrate the place of incorporation and principal place of business for each Name.*

*Id.* at *5 (emphasis added) (citing *EMR (USA Holdings) v. Goldberg*, 18-cv-7849 (ER), 2019 WL5537878, *14 (S.D.N.Y. Oct. 25, 2019); *SHLD, LLC v. Hall*, No. 15 Civ. 6225 (LLS), 2015 WL 5772261; *2 (S.D.N.Y. Sept. 29, 2015); *Wexler v. Allegion (UK) Ltd.*, 16 Civ. 2252 (ER), 2016 WL 6662267, *3 (Nov. 9, 2016); *Century Metal Recycling Priv. Ltd. v. Dacon Logistics, LLC*, No. 3:13-cv-93 (CSH), 2013 WL 5929816, *3 (D. Conn. Nov. 4, 2013); *Ratacjzak v. Beazley Sols. Ltd.*, No. 13-c-045, 2013 WL 2147543, *1 (E.D. Wis. May 15,

2013); *StormWater Structures, Inc. v. Platipus Anchors, Inc.*, No. H-09-2755, 2010 WL 582554, *1 (S.D. Tex. Feb. 11, 2010); *HFGL Ltd. V. Alex Lyon & Son Sales Managers and Auctioneers, Inc.*, 264 F.R.D. 146, 147 n.2 (D.N.J. 2009); *Primus Telecoms., Inc. v. Toshiba of Eur. Ltd.*, No. 09-cv-10, 2009 WL 3064669, *2 n.2 (E.D. Va. Sept. 22, 2009); *Novae Underwriting, LTD. v. Cunningham Lindsey Claims Mgmt.*, No. 07-C-2008, 2008 WL 4542988, *1 (N.D. Ill. Apr. 1, 2008); *Simon Holdings PLC Grp. of Cos. U.K. v. Klenz*, 878 F. Supp. 210, 211 (M.D. Fla. 1995); *Chok v. S & W Berisford, PLC*, 624 F. Supp. 440, 441–42 (S.D.N.Y 1985)).

Despite holding that "a U.K. private limited company is an analog to an American corporation" like its "many sister courts," the *Brink's Co.* court further noted that even ***"if the Court were to apply the Seventh Circuit's test, ... a U.K. private limited company would still be considered similar to an American corporation for diversity jurisdiction.*" *Id.* at *6 (emphasis added). In that regard, the court explained:

> The hallmarks of an American corporation include a formal business structure with board meetings, transferable stocks, no pass-through taxation, and various shareholders who do not assume liability for the corporations' debts or liabilities. *See Lear*, 353 F.3d at 583. *A private limited company has all of these features:* a separate legal identity with separate liability; at least one director and one secretary; marketable stocks, though they cannot be sold on the public exchange; required annual reports to the Companies House, the United Kingdom's equivalent of a State Corporation Commission; and no pass-through taxation. Companies Act 2006, c. 46, pt. 1 §§ 3–4, 544; *id.* at pt.2 § 16; L. OF INT'L TRADE §§ 145:4, 145:6, 145:8; 2 GOING GLOBAL § 26:23; *see also Setting up a Private Limited Company, supra*. ***Even under the Seventh Circuit's approach, a private limited company contains almost all the characteristics of an American corporation.***

*Id.* at *6 (emphasis added).

Plaintiff does not offer any cases or authority suggesting a different conclusion than that uniformly reached by courts across the country is warranted in this case. And there is no dispute that Tokio Marine, Hardy Underwriting Limited, and Talbot 2002 Underwriting Capital Limited

are incorporated in the UK, where they have their principal places of business. Thus, for the same reasons and pursuant to the same authority cited and relied upon by the court in *Brink's Co., supra,* these entities must also be treated as corporations with citizenship diverse to Plaintiff's. *See Brink's Co., supra,* at \*5-6 (citing collection of cases, provisions of the UK Companies Act 2006, and secondary sources).

The evidence and authority is clear that Defendants have established complete diversity with regards to Tokio Marine, Hardy Underwriting Limited, and Talbot 2002 Underwriting Capital Limited.

## III. <u>Mutual Insurance Companies</u>

Defendants AEGIS and EIM are mutual insurance companies. ECF Nos. 15, 17; Pl Motion, p. 12.

### A.    Jurisdiction over mutual insurance companies is not based on the citizenship of their members

Plaintiff contends that because Defendants EIM and AEGIS are "mutual insurance companies" and the members of these companies are the policyholders, jurisdiction over these entities is based on the citizenship of each company's policyholders/members. *See* Pl. Motion, p. 21. That is incorrect.

Courts have routinely recognized the corporate status of mutual insurance companies, affirming time and again that a mutual insurance company's place of citizenship is governed by its state of incorporation and principal place of business (as opposed to the citizenship of its policyholders/members). *See, e.g., Lowe v. State Farm Mut. Auto Ins. Co.,* No. 4:16-cv-135, 2016 WL 9223865, at \*1 (N.D. Fl. April 8, 2016) ("Courts have consistently treated mutual insurance companies as corporations for [diversity] purposes."); *CMA CGM (America), LLC v. RLI Ins. Co.,* No: 12-cv-03306, 2013 WL 588978, at \*1 (D. Md. Feb. 13, 2013) (stating that

14

Home State County Mutual Insurance Company is organized under the laws of Texas and is a citizen of Texas for diversity purposes); *Abercrombie v. Nationwide Mut. Ins. Co.*, 999 F. Supp. 660, 661 (D. Md. 1998) (noting that Nationwide Mutual Insurance Company is an Ohio corporation with its principal place of business in Ohio); *Lang v. Windsor Joy Mut. Ins. Co.*, 487 F.Supp. 1303, n. 3 (E.D. Pa. 1980) (in determining diversity, noting that Windsor Joy Mutual Insurance Company is a Pennsylvania corporation with its principal place of business in Pennsylvania).[4]

Plaintiff does not cite to a single case that supports its position that a mutual insurance company is a citizen of any state in which its members are citizens. Rather, Plaintiff relies on cases concerning "reciprocal insurance exchanges." *See, e.g., James G. Davis Const. Corp. v. Erie Ins. Exchange*, 953 F.Supp.2d 607 (D. Md. 2013). However, mutual insurance companies and reciprocal insurance companies are not analogous:

> In a reciprocal insurance exchange, individuals and businesses pool risk by agreeing to indemnify each other against particular kinds of losses. 43 Am. Jur. 2d *Insurance* § 72 (2016). These policyholders—known as "subscribers"—act through a common attorney-in-fact and are simultaneously both insurers and insureds. (citations omitted). ***Unlike mutual insurance companies, insurance exchanges do not have a corporate existence; instead, they are simply an unincorporated association of individuals who swap potential liabilities between themselves.*** 43 Am. Jur. 2d *Insurance* § 72 (2016); 2 J. Appleman at § 1012. As an unincorporated association, a reciprocal insurance exchange is a citizen of any state in which its members are citizens.

*Staggs v. Farmers Ins. Exch.*, No. 3:15-cv-01502, 2016 WL 1725302 at *2 (D. Or. April 27, 2016) (emphasis added). The court in Staggs further noted that there are "key differences" between a mutual insurance company and an insurance exchange, stating that ***"[o]ne of these key***

---

[4] As discussed in Section III.B., the fact that AEGIS and EIM are *foreign* mutual insurance companies is irrelevant; they should still be treated as a corporation for diversity purposes.

*significant distinctions is citizenship for subject matter jurisdiction purposes." Id.*, n. 1.

In other words, the citizenship of a reciprocal insurance exchange is based on the citizenship of its members because a reciprocal insurance exchange is an unincorporated association. Conversely, mutual insurance companies, such as AEGIS and EIM, are incorporated and have a "corporate existence." Consequently, the citizenship of a mutual insurance company is based on its state of incorporation and principal place of business. As set forth in Defendants' Notice of Removal and Corporate Disclosures, AEGIS is a mutual insurance company incorporated under the laws of Bermuda that conducts business in the United States through a wholly-owned subsidiary whose principal place of business is New Jersey. *See* ECF No. 1, ¶ 15, ECF No. 15. EIM is a mutual insurance company incorporated under the laws of Barbados with its principal place of business in Tampa, Florida. *See* ECF No. 1, ¶ 13, ECF No. 17.[5]

> **B. AEGIS and EIM should still be treated as corporations for purposes of diversity notwithstanding that they are foreign entities, and there is no legitimate question or doubt as to the diversity of these three companies.**

The fact that AEGIS and EIM are foreign insurance companies is irrelevant because they are both the functional equivalent of an American corporation. To remove all doubt, attached as **Exhibit H** to Defendant's Opposition is a Declaration from Kevin Wolff, Vice President, General Counsel & Secretary of EIM, describing EIM's corporate history and features. *See* Ex. H, Declaration of Kevin Wolff ("Wolff Decl."). Defendants further include Declarations on behalf of AEGIS in support of their Opposition—**Exhibit I,** the Declaration of Alan Irving

---

[5] It is noteworthy that both AEGIS and EIM have submitted Notice of Removals in other actions containing the same information set forth in Defendants' Notice of Removal (ECF No. 1, ¶¶ 13, 15) and have proceeded in federal court pursuant to diversity jurisdiction. *See e.g. FirstEnergy Gen. Corp. v. Liberty Mutual Ins. Co. et. al*, No. 5:12-cv-02417, 2012 WL 4852258 (N.D. Ohio Sept. 12, 2012) (a Notice of Removal that states Defendant Energy Mutual Insurance Ltd. is incorporated in Barbados, with a principal place of business in Tampa, Florida and Defendant Associated Electric and Gas Insurance Services, Limited is incorporated under the laws of Bermuda with a principal place of business in East Rutherford, New Jersey). Diversity was never questioned and this case proceeded in federal court. *See* **Exhibit G.**

Bossin ("Bossin Decl."), **Exhibit J,** the Declaration of James P. Corcoran ("Corcoran Decl.") and **Exhibit K,** the Declaration of M. Kristan Rizzulo ("Rizzulo Decl"). These AEGIS Declarations were previously filed in support of its opposition to plaintiff's motion to remand in *Vectren Corp. and Southern Indiana Gas & Electric Co.*, No. 1:18-cv-02548-RLY-MJD (S.D. Ind. October 9, 2018). In *Vectren,* plaintiff similarly argued that AEGIS should not be treated like a corporation for purposes of determining diversity. **Exhibit L.** These Declarations were submitted by AEGIS to demonstrate its corporate history and structure.[6] That case remained in federal court until settlement. **Exhibit M.**

While neither Bermuda law nor Barbados law uses the term "corporation," both establish a dichotomy between incorporated entities—"companies"— and unincorporated entities such as limited liability companies. *See* Ex. I (Bossin Decl.), ¶¶ 5 & 16; Ex. H (Wolff Decl.) ¶¶ 5 & 17. AEGIS exists as an incorporated company pursuant to the authority of the Associated Electric & Gas Insurance Services Limited Consolidated and Amendment Act, 1995, an act of the Bermuda legislature. Ex. I (Bossin Decl.), ¶ 7, Ex. 1. It is also subject to the Bermuda Companies Act 1981. Ex. I (Bossin Decl.) ¶ 5, *see also* **Exhibit N** (copy of the Bermuda Companies Act, 1981). Similarly, EIM exists as an incorporated company pursuant to the authority of the Barbados, Companies Act, Chapter 308. Ex. H (Wolff Decl.), ¶ 6, Ex. 2.

Furthermore, the U.S. government treats AEGIS and EIM as "corporations." Both companies have elected to be taxed as U.S. corporations for all U.S. federal tax purposes under Section 953(d) of the U.S. Department of the Treasury Internal Revenue Service. *See* Ex. K (Rizzolu Decl.), ¶ 3-4 ("AEGIS's election was not between corporate status and some other status. AEGIS's election was between treatment as a U.S. corporation and treatment as a foreign

---

[6] While submitted in opposition to a motion filed by *Vectren,* these Declarations are not specific (nor do they reference) any facts specific to that matter. Undersigned counsel has confirmed that the matters sworn to in these Declarations with referenced exhibits remain unchanged as of this date and are equally applicable in this case.

corporation for U.S. federal tax purposes…AEGIS made the election under section 953(d) to be treated as a U.S. corporation rather than as a foreign corporation, for U.S. tax purpose."); Ex. H (Wolff Decl.) ¶ 15, Ex. 5 ("EIM's election statement filed pursuant to Notice 89-79 under Internal Revenue Code 953(d), which was accepted by the U.S. Department of the Treasury Internal Revenue Service, states that EIM 'elects under 953(d) to be treated as a domestic corporation for United States tax purposes.'"). The State of Florida has also certified that EIM is an "out of the country *corporation* authorized to transact business in the State of Florida." *Id.* at ¶ 7, Ex. 3 (emphasis added).

AEGIS and EIM possess other attributes of a U.S. corporation as well. These attributes include, but are not limited to:

- AEGIS and EIM are companies with a perpetual existence. Ex. I (Bossin Decl), ¶ 6; Ex. H (Wolff Decl.), ¶ 8.

- AEGIS and EIM are both regulated by by-laws and governed by a Board of Directors. Ex. I (Bossin Decl.), ¶ ¶ 9-10.a; Ex. H (Wolff Decl.), ¶ ¶ 9-10.a, Ex. 2.

- AEGIS and EIM have a corporate existence separate from that of its members. Both companies have the power to enter into contracts, own property, transact business, and sue and be sued in its own name and right. Ex. I (Bossin Decl), ¶ ¶ 11-12; Ex. H (Wolff Decl.), ¶ ¶ 11-12.

- In the event of a winding up of AEGIS or EIM, the members of AEGIS and EIM have not assumed, undertaken or agreed to pay the debts of AEGIS or EIM. Ex. I (Bossin Decl), ¶ 13; Ex. H (Wolff Decl.), ¶ 13.

- The members of these two companies are not subject to taxation on AEGIS's or EIM's revenues or profits. Ex. I (Bossin Decl), ¶ 14; Ex. H (Wolff Decl.), ¶ 14. Both AEGIS and EIM are taxed as U.S. corporations. Ex. K (Rizzolu Decl.), ¶ 3-4, Ex. H (Wolff Decl.) ¶ 15, Ex. 5.

Accordingly, AEGIS and EIM are mutual insurance companies that are incorporated and have all the attributions of an American corporation. Therefore, these entities must be treated as a corporation for purposes of diversity (under both the Supreme Court approach or Seventh Circuit approach discussed above).

In sum, AEGIS is a mutual insurance company incorporated under the laws of Bermuda that conducts business in the United States through a wholly-owned subsidiary whose principal place of business is New Jersey. And EIM is a mutual insurance company incorporated under the laws of Barbados with its principal place of business in Tampa, Florida. Thus, Defendants have clearly established "complete diversity" pursuant to 1332(a)(2) with respect to Defendants AEGIS and EIM.

## C. AEGIS disclosed New Jersey as its principal place of business because AEGIS conducts all of its business and operations in the United States through a wholly owned subsidiary whose principal place of business is in New Jersey

As part of their pleadings, Defendants disclosed that AEGIS conducts all of its business and operations in the United States through a wholly owned subsidiary whose principal place of business is in New Jersey. *See* ECF No. 1 at ¶ 15; ECF No. 15. Plaintiff argues that "this alone destroys Insurers' diversity." Pl. Mot, p. 23. However, Plaintiff is "a Delaware corporation with its principal place of business in Washington state." Pl. Motion, p. 3 (citing ECF No. 8, ¶ 1). Thus, diversity would be destroyed only if AEGIS is a citizen of Delaware or Washington. It is not. All of AEGIS's business operations in the United States are conducted through a subsidiary whose principal place of business is in New Jersey. *See* ECF No. 1 at ¶ 15; ECF No. 15.

To the extent this Court deems necessary any correction or clarification regarding AEGIS's principal place of business, Defendants respectfully request leave to amend the Notice of Removal, as this is, if anything, a mere technical defect, and complete diversity does in fact exist. *See* 28 U.S.C. §1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See Nutter v. New Rents, Inc.,* 1991 WL 193490 at *2 (4th Cir. 1991) (permitting a corporation to amend notice of removal to state its principal place of

business).[7]

As this Court has stated, cases in which courts "allow supplemental allegations are those in which a defendant imperfectly alleges diversity of citizenship by failing to allege one of the required facts to establish the citizenship of a corporation or an LLC." *Covert v. Auto. Credit Corp.*, 968 F. Supp. 2d 746, 750 (D.Md. 2013) (citing *DBS, Inc. v. Selective Way Ins. Co.*, 2:13–CV–312, 2013 WL 3729169 at *3 (E.D.Va. July 10, 2013); *Muhlenbeck*, 304 F.Supp.2d at 798-99)). *See also Muhlenbeck*, 304 F. Supp. 2d at 802 (quoting *Nutter v. New Rents, Inc.*, 945 F.2d 398 (4th Cir. 1991)) ("In making this determination [whether to permit defendant to amend its removal petition], the court is guided by the Fourth Circuit's statement in *Nutter* that 'jurisdiction ought to depend more upon the truth of defendant's allegation of diversity than upon the … choice of verbiage'"); *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 988 F.Supp. 913, 914-15 (D.Md. 1997) ("[A] district court should be cautious in denying defendants access to a federal forum because remand orders are generally unreviewable"). And under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave to amend when justice so requires."

## IV.   Societas Europaea

Plaintiff also questions the corporate form of Defendant Starstone, a Societas Europaea ("SE") company incorporated under the corporate law of the European Union ("EU"). Plaintiff ignores Defendants' identification of Starstone as a corporation and foreign national incorporated entity under EU law, yet suggests that Defendants have not sufficiently shown that Starstone is

---

[7] *See also Board of Education of Charles County, Maryland v. Travelers Indemnity Co.*, 486 F.Supp. 129 (D.Md. 1980) (allowing amendment when the removal petition did not properly allege the jurisdictional facts in detail); *Muhlenbeck v. KI, LLC*, 304 F. Supp. 2d 797, 798–99 (E.D.Va. 2004) (allowing defendant to file an amended removal petition to properly allege jurisdictional facts for business entity); *Kinney v. Columbia Savings & Loan Association*, 191 U.S. 78, 24 S.Ct. 30 (1903) (granting leave to amend petition to show citizenship of party); *Camacho v. Cove Trader, Inc.*, 612 F.Supp. 1190 (E.D.Pa. 1985) (granting defendant's request to amend to properly allege citizenship of party); *Hendrix v. New Amsterdam Cas. Co.*, 390 F.2d 299 (10th Cir. 1968) (permitting amendment to properly allege citizenship of party); *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316 (9th Cir. 1969) (permitting amendment for allegations that are defective in form); *Firemen's Ins. Co. of Newark, N.J. v. Robbins Coal Co.*, 288 F.2d 349 (5th Cir. 1961) (permitting amendment for defective allegations of diversity).

"organized and functions" as "the functional equivalent of a corporation." *See* Pl. Motion, p. 20.

Plaintiff's arguments with respect to Starstone are similarly premised on the Seventh Circuit approach discussed *supra*, and snippets and characterizations of decisions from jurisdictions outside the Fourth Circuit addressing different types of business entities not at issue in this case. *See* Pl. Motion, p. 18-20.

Regardless of which approach is employed, however, Starstone is a corporation for purposes of diversity jurisdiction. Indeed, both the law and the facts uniformly support the conclusion that an SE like Starstone is a juridical person with its own legal personality and has the features of an American corporation. Starstone's presence in this action does not compromise complete diversity.   Starstone is a foreign national incorporated entity, specifically an SE incorporated under the corporate law of the EU, registered in Lichtenstein, with its principal place of business in London, England until 2017, at which time it moved its principal place of business to Schann, Liechtenstein. *See* ECF No. 1 at ¶18; Starstone Corporate Disclosure at ECF No. 20; **Exhibit O,** Declaration of Robert Redpath ("Redpath Decl.") at ¶¶ 6-8; Starstone's listing in the Liechtenstein Commercial Register attached to Redpath Decl. Ex. 3, and available to the public at www.oera.li.

The EU's SE statute, adopted by Member States in 2001, created a legal framework for a new kind of "corporate entity," the European Company (also referred to as "SE"). *See* Albert H. Kritzer, 2 International Contract Manual § 56:38 (Dec. 2020 Update). The legal framework for an SE company is set out in EU Council Regulation No. 2157/2001. *Id*.

Under the SE regime, a company is registered in one member state (*i.e.*, participating European country), but companies active in more than one member state can operate as a single company throughout the EU, and are governed by a single set of rules, rather than through

subsidiaries incorporated under different national laws. *Id. See also*, EU Council Regulation No. 2157/2001, a copy of which is included as Ex. 1 to the Redpath Decl. produced herewith, and incorporated herein by reference.

The principal features of an SE, as noted in the first Article of the SE statute, include capital that is divided into shares, limited liability, and legal personality. *See* EU Council Regulation No. 2157/2001 at Art. 1(2) ("The capital of an SE shall be divided into shares. No shareholder shall be liable for more than the amount he has subscribed."); *id.* at Art. 1(3) ("An SE shall have legal personality."). The SE statute specifically provides for legal personality from the date of registration. *See id.* at Art. 16(1) ("An SE shall acquire legal personality on the date on which it is registered…").

Regarding an SE's issuance of shares, as the preamble to EU Council Regulation No. 2157/2001 explains, "[t]he SE itself must take the form of a company with share capital, that being the form most suited, in terms of both financing and management, to the needs of a company carrying on business on a European scale," with "a minimum amount of capital" set "to ensure that such companies are of reasonable size." *Id.* at preamble ¶¶ 13-14. That Regulation further provides that an SE "wishing to utilize such financial instruments" may offer their securities to the public, subject to the requirements imposed on other similar public companies. *Id.* at preamble ¶ 12.

The SE statute imposes other requirements that are characteristic of American corporations, including, for example, registration requirements (*see, e.g., id.* at Art. 12-16), reporting requirements (*see, e.g., id. at* Art. 61-62), shareholder meetings, including a general meeting and annual meetings, with voting by shareholders (*see, e.g., id.* at Art. 38, 52-60), and requires management and oversight of an SE by corporate "organs" comprised of members

appointed at shareholder meetings (*see, e.g., id.* at Art. 38-45).

Nevertheless, to eliminate all doubt, Starstone has disclosed the nature and structure of its corporate makeup in detail. The Redpath Decl. submitted by Robert Redpath, Senior Vice President and Senior Legal Director at US Enstar (US) Inc. describes Starstone's corporate history and attributes. *See* Ex. O (Redpath Decl.). The features detailed therein include, *inter alia*, that:

- Starstone has a corporate existence separate from that of its shareholders. *Id.* at ¶ 12.

- Starstone is an incorporated company with perpetual existence without regard to death, dissolution, or withdrawal of its individual shareholders. *Id.* at ¶ 15.

- Starstone has the power to enter into contracts, own property, transact business, and sue and be sued in its own name and right. *Id.* at ¶ 14.

- Shareholders are not liable for Starstone's debts, and the potential liability of Starstone's shareholders is limited to a shareholder's capital stake in the company. *Id.* at ¶ 13.

- Starstone is taxed in Liechtenstein at the corporate level, and Starstone's shareholders are not subject to taxation in Liechtenstein on Starstone's revenues or profits. *Id.* at ¶ 17.

- Starstone is governed by a Board of Directors. *Id.* at ¶ 18.

- Starstone is able to issue shares that are transferable, subject to certain restrictions. *Id.* at ¶ 16.

Moreover, it bears emphasizing that even the U.S. federal government treats an SE company as *per se* corporations for tax purposes. For example, 26 C.F.R. § 301.7701-2 provides:

(b) Corporations. For federal tax purposes, the term corporation means—

23

...
(8) Certain foreign entities—(i) In general. ... the following business entities formed in the following jurisdictions:

...
European Economic Area/European Union, Societas Europaea

...

26 C.F.R. § 301.7701-2.

As detailed above, it is clear and irrefutable that an SE like Starstone is a juridical person with its own legal personality, and has the qualities and characteristics of an American corporation. Starstone must be treated as a corporation under the Supreme Court approach, and even under the Seventh Circuit approach that has not been adopted in the Fourth Circuit. There is no basis, in law or fact, to conclude otherwise, and as Starstone is an SE incorporated in the EU where it maintains its principal place of business, Defendants have clearly established "complete diversity" pursuant to 1332(a)(2) with respect to Defendant Starstone, and the Court should deny Plaintiff's Motion.

## CONCLUSION

In light of the foregoing, the Declarations and exhibits submitted in support of Defendants' Opposition to Plaintiff's Motion to Remand, the supporting request for judicial notice, and all pleadings and filings herein, Plaintiff's Motion to Remand should be denied. To the extent this Court deems necessary any correction or clarification, Defendants respectfully request that they be granted leave to amend the Notice of Removal as there is no reasonable doubt that complete diversity does, in fact, exist in this case.

Dated: March 5, 2021

Respectfully submitted,

/s/ Robert L. Hebb
Robert L. Hebb (Fed. Bar # 23425)
Richard J. Medoff (Fed. Bar # 19608)
Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400

24

Baltimore, MD 21201
(410) 539-5040 (Telephone)
(410) 539-5223 (Facsimile)
rhebb@semmes.com
rmedoff@semmes.com

Jeffrey S. Weinstein (*Pro Hac Vice*)
Bruce Kaliner (*Pro Hac Vice*)
Pejman Steven Nassi (*Pro Hac Vice*)
Maegan B. McAdam (*Pro Hac Vice*)
Mound Cotton Wollan & Greengrass LLP
One New York Plaza, 44th Floor
New York, NY 10004
Tel: (212) 804-4200
Fax: (212) 344-8066
jweinstein@moundcotton.com
bkaliner@moundcotton.com
snassi@moundcotton.com
mmcadam@moundcotton.com

*Counsel for Defendants,*
*Energy Insurance Mutual Limited, Allianz*
*Global Risks US Insurance Company,*
*Associated Electric & Gas Insurance*
*Services Limited, Starstone Insurance SE*
*f/k/a Torus Insurance (UK) Limited, Lloyd's*
*Syndicate Talbot Validus Group (TAL*
*1183), Lloyd's Syndicate 382, and Tokio*
*Marine Kiln Insurance Limited*