**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*


SNC-LAVALIN CONSTRUCTORS INC.,       \*

      **Plaintiff,**              \*

**v.**                                 **Case No.: GJH-19-873**

                                  \*

**TOKIO MARINE KILN INSURANCE**
**LIMITED,**                              \*

      **Defendant.**             \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

SNC-LAVALIN CONSTRUCTORS INC.,       \*

      **Plaintiff,**              \*

**v.**                                 **Case No.: GJH-19-1510**

                                  \*

**CERTAIN UNDERWRITERS AT**
**LLOYD'S,** *et al.*,                    \*

**Defendants.**                     \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff SNC-Lavalin Constructors, Inc. brought the above-captioned consolidated civil actions against Defendants Energy Insurance Mutual Limited ("EIM"), Allianz Global Risks US Insurance Company, Associated Electric & Gas Insurance Services Limited ("AEGIS"), Starstone Insurance SE f/k/a Torus Insurance (US) Limited, Lloyd's Syndicate Talbot Validus Group (TAL 1183), Lloyd's Syndicate 382 CNA Hardy, and Tokio Marine Kiln Insurance Limited, alleging that Defendants breached an insurance policy contract when they refused to

provide coverage for five claimed losses. ECF No. 1;[1] Case No. GJH-19-1510, ECF No. 8. Pending before the Court is Plaintiff's Motion to Remand, ECF No. 25, and Defendants' Motion for Leave of Court to File Sur-Reply to Plaintiff's Reply in Further Support of Plaintiff's Motion to Remand, ECF No. 29. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion for Leave to File Sur-Reply is granted and Plaintiff's Motion to Remand is denied.

## I. BACKGROUND

Public Service Enterprise Group ("PSEG") hired Plaintiff to act as the engineering, procurement, and construction ("EPC") contractor for the construction of a 755MW combined cycle natural gas fired power generating facility known as the "PSEG Keys Energy Center" located in Brandywine, Maryland (the "Project"). Case No. GJH-19-1510, ECF No. 8 ¶ 8. In its role as EPC contractor, Plaintiff was named as an additional insured on the Construction Erection "All Risks" Insurance Policies that Defendants issued PSEG for the Project (the "Insurance Policies"). *Id.* ¶ 9. During the construction process, the Project experienced five losses for which Plaintiff sought insurance coverage from Defendants: (1) in January 2016, Winter Storm Jonas caused flood damage to the Project; (2) on September 19, 2017, and October 14, 2017, Plaintiff noticed damage to two generators that it purchased from Siemens caused by a combination of storm events and improper packaging by Siemens; (3) in June 2017, Plaintiff discovered that welding slag from one of its contractors damaged approximately 140 bellows installed on the Heat Recovery Steam Generator; (4) on February 14, 2018, Plaintiff discovered that there was weld slag damage to Seal Oil Skid Piping provided by Siemens; and (5) on March

---

[1] Unless otherwise indicated, citations to documents filed on the Court's electronic filing system (CM/ECF) refer to documents filed in Case No. GJH-19-873.

2, 2018, a windstorm damaged certain condenser fan blades and motors. *Id.* ¶ 10. Plaintiff

submitted claims under the Insurance Policies for these five losses. *Id.* ¶ 11. Defendants denied

Plaintiff's claims. *Id.* ¶ 12.

As a result of Defendants' denial of coverage, on November 16, 2018, Plaintiff filed a

breach of contract action in the Circuit Court for Prince George's County ("state court") against

Defendants EIM, Allianz, AEGIS, Starstone Insurance SE, Lloyd's Syndicate Talbot Validus

Group, and Lloyd's Syndicate 382 CNA Hardy. ECF No. 7-2. On February 15, 2019, after the

deadline for removal to federal court had passed, Defendants responded to Plaintiff's state court

complaint by filing a Motion to Dismiss Complaint, or in the Alternative, to Join Necessary

Parties, arguing that Tokio Marine was a necessary party to the civil action.[2] ECF No. 7-3.

Plaintiff argued in opposition, on March 5, 2019, that Tokio Marine was not a necessary party

and that Defendants simply were attempting to get a second chance to remove the case to federal

court after missing the initial deadline. ECF No. 7-4 at 4–5.[3] Also in Plaintiff's Opposition to

Defendants' Motion to Dismiss, or in the Alternative, to Join Necessary Parties, Plaintiff

admitted that the omission of Tokio Marine from the state court case was inadvertent and

indicated that it intended to file a separate action against Tokio Marine in this Court. *Id.* at 4, 8.

Plaintiff initiated its separate federal court action against Tokio Marine in this Court on March

---

[2] Prior to filing their Motion to Dismiss, or in the Alternative, to Join Necessary Parties, Defendants offered to consent to Plaintiff filing an amended complaint adding Tokio Marine if Plaintiff would consent to Defendants removing the case to federal court. ECF No. 7-4 at 4–5, 30–31. Plaintiff declined. *Id.*

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

25, 2019, opening Case No. GJH-19-873.[4] ECF No. 1.[5]

On April 2, 2019, the state court ordered Plaintiff to file an amended complaint adding Tokio Marine to the action. ECF No. 7-6. Plaintiff complied, filing the Amended Complaint on April 25, 2019. Case No. GJH-19-1510, ECF No. 8. On May 24, 2019, Defendant Tokio Marine removed the state court action to this Court, opening Case No. GJH-19-1510. Case No. GJH-19-1510, ECF No. 1.

On June 14, 2019, the parties filed joint motions to stay in both Case No. GJH-19-873 and Case No. GJH-19-1510 in order to attempt to resolve Plaintiff's claims out of court. ECF No. 11; Case No. GJH-19-1510, ECF No. 26. In the Joint Motion to Stay filed in Case No. GJH-19-1510, which was the action removed from state court, the parties requested that, "to the extent the parties cannot resolve the claims during the stay," the Court allow Plaintiff ten days to file a motion for remand after the stay is lifted. Case No. GJH-19-1510, ECF No. 26 at 2. However, out of an abundance of caution and because the Court had not yet ruled on the Joint Motions to Stay, Plaintiff filed a Motion to Remand in Case No. GJH-19-1510 on June 24, 2019 in order to preserve its ability to request a remand to state court. Case No. GJH-19-1510, ECF No. 27. Also on June 24, 2019, the Court granted the parties Joint Motions to Stay. ECF No. 13; Case No. GJH-19-1510, ECF No. 28.

When settlement negotiations were unsuccessful, the parties requested, on October 28,

---

[4] Plaintiff, through a clerical error, filed its federal court complaint against Defendant Tokio Marine first in the United States District Court for the District of Columbia, Case No. RDM-19-799 (D.D.C.), before refiling in this Court, Case No. GJH-19-873 (D. Md.). ECF No. 10-1 at 1. The D.D.C. case was then transferred to this Court, Case No. PWG-19-1083. *Id.* at 2. On May 6, 2019, Plaintiff filed a Motion to Consolidate Case No. GJH-19-873 and Case No. PWG-19-1083, ECF No. 10, which the Court granted on December 5, 2019, ECF No. 15.

[5] On April 23, 2019, Defendants filed a Motion to Dismiss Complaint, or in the Alternative, to Join Necessary Parties, arguing that the original state court defendants were necessary to the federal court action against Tokio Marine. ECF No. 7. The Court denied this motion as moot after consolidating Case No. GJH-19-873 and Case No. GJH-19-1510. ECF No. 21.

2020, that the Court lift the stay and consolidate Case No. GJH-19-873 and Case No. GJH-19-1510, ECF No. 19; Case No. GJH-19-1510, ECF No. 36, and renewed that request on January 25, 2021, ECF No. 20; Case No. GJH-19-1510, ECF No. 45. On February 2, 2021, the Court lifted the stay, consolidated the cases, and granted Plaintiff ten days to file a motion to remand. ECF No. 21. Plaintiffs filed the instant Motion to Remand on February 12, 2021, which mooted the previous Motion to Remand filed in Case No. GJH-19-1510. ECF No. 25.[6] Defendants responded in opposition on March 5, 2021, ECF No. 27, and Plaintiff replied on March 19, 2021, ECF No. 28. On April 2, 2021, Defendants filed a Motion for Leave of Court to File Sur-Reply to Plaintiff's Reply in Further Support of Plaintiff's Motion to Remand. ECF No. 29. Plaintiff opposed Defendants' Motion for Leave of Court to File Sur-Reply on April 14, 2021, ECF No. 30, and Defendants replied in support of their motion on April 27, 2021, ECF No. 31.

## II. DEFENDANTS' MOTION FOR LEAVE OF COURT TO FILE SUR-REPLY

"As a general rule, this Court will not allow parties to file sur-replies." *Nicholson v. Volkswagen Grp. of Am., Inc.*, No. RDB-13-3711, 2015 WL 1565442, at *3 (D. Md. Apr. 7, 2015) (citing Loc. R. 105.2(a) (D. Md.)). A "party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013). The Court may permit a sur-reply if the reply brief "raises new legal issues or new theories" or the party requesting a sur-reply "would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Id.* (internal quotation marks and citations omitted). Allowing a party to file a sur-reply is within the Court's discretion under Local Rule 105.2(a). *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013).

---

[6] The Court thus denies as moot Plaintiff's June 24, 2019 Motion to Remand filed in Case No. GJH-19-1510, Case No. GJH-19-1510, ECF No. 27.

Here, Plaintiff's Reply Brief in Further Support of Motion to Remand—a document that, including attachments, is 909 pages in length—introduces several new legal arguments as well as arguments based on exhibits not previously before the Court. *See* ECF No. 28. Of particular note is Plaintiff's argument—presented for the first time in its reply—that, when determining whether a foreign entity is a corporation or a non-corporation for diversity purposes, the critical factor is the presence or absence of transferrable shares. *Compare* ECF No. 25-1 at 9, 18–21 (Plaintiff's Motion to Remand arguing that foreign entity Defendants bear the burden of demonstrating their corporateness through relevant documents, affidavits or other materials), *with* ECF No. 28 at 17 (Plaintiff's Reply arguing that because AEGIS and EIM do not have transferrable shares they cannot be the equivalent of an American corporation for diversity purposes). Defendants' proposed sur-reply addresses this argument. ECF No. 29-2 at 5–6. Because the proposed sur-reply is the first opportunity for Defendants to address Plaintiff's new legal theory, Defendants' Motion for Leave to File Sur-Reply is granted.

## III.    PLAINTIFF'S MOTION TO REMAND

### A.    Standard of Review

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, because Federal Courts are courts of limited jurisdiction, a district court must remand any case in which it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *see In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). Therefore, a party seeking adjudication in federal court must "demonstrate the federal court's jurisdiction over the matter." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir.2008)

(internal citation omitted). "Where a defendant seeks to remove a case to federal court, the defendant must simply allege subject matter jurisdiction in his notice of removal." *Cunningham v. Twin City Fire Ins. Co.*, 669 F.Supp.2d 624, 627 (D. Md. 2009). "But if the plaintiff challenges removal in a motion to remand, then the burden is on the defendant to '*demonstrat[e]* that removal jurisdiction is proper.'" *Id.* (citing *Strawn*, 530 F.3d at 296) (emphasis in original).

On a motion to remand, the Court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court"—consistent with federal courts' reluctance "to interfere with matters properly before a state court." *Rizwan v. Lender Servs. Inc.*, 176 F. Supp. 3d 513, 515 (D. Md. 2016) (quoting *Barbour v. Int'l. Union*, 640 F.3d 599, 615 (4th Cir. 2011), *abrogated by statute on other grounds* by 28 U.S.C. § 1446(b)(2)(B)). However, "because the decision to remand is largely unreviewable, district courts should be cautious about denying defendants access to a federal forum." *Alston v. Balt. Gas & Elec. Co.*, No. SAG-20-2317, 2020 WL 6684623, at *3 (D. Md. Nov. 12, 2020) (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 988 F. Supp. 913; 914–15 (D. Md. 1997)); *see also Wieczorek v. Nat'l Cath. Prayer Breakfast*, No. MJG-15-02599, 2016 WL 54798, at *2 (D. Md. Jan. 5, 2016) ("Without access to appeal, federal courts are obliged to carefully scrutinize challenges to jurisdictional authority[.]" (internal quotation marks and citations omitted)).

## B. Discussion

In their Notice of Removal, Defendants assert that the Court has subject matter jurisdiction over this action based on the diversity of parties pursuant to 28 U.S.C. § 1332. Case No. GJH-19-1510, ECF No. 1 at 1. District courts have diversity jurisdiction over civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. See 28 U.S.C. § 1332(a)(1). For diversity jurisdiction to exist, however, there must be "complete

diversity," meaning that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999). Diversity jurisdiction is determined as of the date the suit is filed. *See, e.g.*, *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255– 56 (4th Cir.2002) (holding that "a court determines the existence of diversity jurisdiction 'at the time the action is filed,' regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy" (quoting *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991))).

In its pending Motion to Remand, Plaintiff does not challenge the amount-in-controversy requirement of diversity jurisdiction, but rather alleges that Defendants have not adequately demonstrated complete diversity. Specifically, Plaintiff presents questions regarding the citizenship of six Defendants, all of whom are foreign entities: (1) Tokio Marine; (2) Lloyd's Syndicate Talbot Validus Group; (3) Lloyd's Syndicate 382 CNA Hardy; (4) AEGIS; (5) EIM; and (6) Starstone Insurance SE.[7] *See* ECF No. 25-1 at 5–7. The Court will first address how to determine the citizenship of a foreign entity for purposes of diversity jurisdiction and then will analyze the citizenship of each foreign entity defendant to determine whether those defendants are diverse from Plaintiff.

### 1. Determining the Citizenship of a Foreign Entity for Purposes of Diversity Jurisdiction

A corporation is a citizen of both its state of incorporation and its principal place of business for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010); *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d

---

[7] The citizenship of Plaintiff is undisputed. Plaintiff is a citizen for diversity purposes of both Delaware (state of incorporation) and Washington (principal place of business). ECF No. 25-1 at 21; Case No. GJH-19-1510, ECF No. 1 at 3. The parties also do not dispute the citizenship of Defendant Allianz, which was incorporated in Illinois and has its principal place of business in Chicago, Illinois. ECF No. 25-1 at 2; Case No. GJH-19-1510, ECF No. 1 at 4.

101, 102 (4th Cir. 2011). For business entities other than corporations (LLCs, partnerships, etc.),

however, diversity depends on the citizenship of all its members. *Carden v. Arkoma Assocs.*, 494

U.S. 185, 188, 197 (1990); *see also Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 223

(4th Cir. 2019) (noting that the dual citizenship rule has been limited to "true-blue"

corporations); *James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 953 F. Supp. 2d 607, 610 (D.

Md. 2013) (stating that an unincorporated association is a citizen of any state in which its

members are citizens). This citizenship analysis is complicated in the foreign context because

business forms in foreign countries are not the same as those in the United States. *See White*

*Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684, 686 (7th Cir. 2011)

(acknowledging that it is hard to determine whether a business entity from a foreign country is

equivalent to a corporation: "not even the United Kingdom has a business form that is exactly

equal to that of a corporation"); Elisabeth C. Butler, Note, *Diversity Jurisdiction and Juridical*

*Persons: Determining the Citizenship of Foreign-Country Business Entities*, 97 Tex. L. Rev.

193, 196 (2018).

  In 1933, the Supreme Court in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 482 (1933),

treated a sociedad en comandita—a business entity organized under the laws of Puerto Rico—the

same as a U.S. corporation for the purposes of diversity jurisdiction and held the sociedad was a

citizen of Puerto Rico. The Supreme Court explained that common-law countries traditionally

treat corporations—but not other business entities—as "juridical person[s]," whereas civil-law

jurisdictions, like Puerto Rico, often have more complicated understandings of juridical

personhood. *Id.* at 480–81. The Supreme Court thus concluded that to use the common-law

incorporated/unincorporated juridical-person dichotomy in the Puerto Rican context "invoke[d] a

false analogy." *Id.* at 481. Instead, the Court found the sociedad was a citizen of its country of

organization, rather than looking at the citizenships of its members, because Puerto Rican law "consistently regarded [it] as a juridical person." *Id.* The Court emphasized the "complete" treatment of a sociedad as a juridical person under Puerto Rican law, including the right to contract, own property, exist in perpetuity, sue, be sued without personal intervention from members, be managed by a board of directors, and be primarily liable for its debt. *Id.* at 481–82 (stating that the sociedad's juridical personality "is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the sociedad has a different status for purposes of federal jurisdiction than a corporation organized under that law").

The Supreme Court subsequently limited *Russell*. The Supreme Court first clarified that the *Russell* juridical-person inquiry only applies when there is a problem "fitting an exotic creation of the civil law" into the federal incorporated/unincorporated dichotomy. *See United Steelworkers, AFL-CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 151 (1965). In *Carden*, the Court further determined that the *Russell* requirement to look beyond incorporated/unincorporated status is inapplicable for "at least common-law entities" and "likely all entities beyond the Puerto Rican *sociedad en comandita*." 494 U.S. at 190

Lower courts have since followed two divergent approaches. The Fifth and Ninth Circuits have adopted a "juridical-person approach," guided by *Russell*, which considers a foreign business entity to be a citizen for diversity purposes "so long as the entity is considered a juridical person under the law that created it." *Cohn v. Rosenfeld*, 733 F.2d 625, 629 (9th Cir. 1984); *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 298 (5th Cir. 2010); Butler, *supra*, at 194.

The Seventh and Eighth Circuits have instead adopted a "comparison approach," which requires comparing the foreign entity to certain paradigm characteristics of an American corporation. *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 582–83 (7th Cir.

2003); *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1105 (8th Cir. 2019);

Butler, *supra*, at 194. In making the comparison, relevant characteristics include whether the

entity: "[has] perpetual existence, [is] governed by a Board of Directors, [is] able to issue

tradable shares . . ., and [is] treated as independent of its equity investors—who are neither

taxable on its profits nor liable for its debts." *Lear*, 353 F.3d at 583. The Seventh Circuit views

the *Russell* juridical-person inquiry as limited, "cover[ing] the sociedad en comandita and

nothing else." *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 789

(7th Cir. 2014).

A footnote in *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 354 n.5 (4th

Cir. 2020) indicates that the Fourth Circuit favors a two-step comparison approach. Specifically,

the Fourth Circuit stated that, if a foreign corporation lacks a clear domestic analogue, courts

should look to the "structure of an entity" to determine if its features resemble a corporation. *See

id.* (referencing a Seventh Circuit comparison approach case); *Hawkins*, 935 F.3d at 224 ("To be

sure, we might well be inclined to adopt the Seventh Circuit's approach if we were reviewing the

issue de novo."). The Court will apply that approach here.

### 2.     The Citizenship of the Six Foreign Entity Defendants[8]

#### a.     Tokio Marine

In the Notice of Removal, Defendants allege that Tokio Marine is "a private limited

company incorporated and registered in England and Wales" and "a foreign national

incorporated entity with its principal place of business in London, England[,]" and thus Tokio

---

[8] Plaintiff brought this action against "Certain Underwriters at Lloyd's Subscribing to Policy No. P15UC02310[,]" AEGIS, Allianz, and EIM. Case No. GJH-19-1510, ECF No. 8 ¶¶ 2–5. However, none of the parties dispute that "when a plaintiff sues 'Certain Underwriters at Lloyd's London,' a court must look to the Names [or entities] underwriting the policy for diversity purposes." *Brink's Co.*, 2020 WL 6829870, at *3. Thus, the Court must look at the citizenship of Tokio Marine, Lloyd's Syndicate Talbot Validus Group, Lloyd's Syndicate 382 CNA Hardy, and Starstone Insurance SE—*i.e.*, the underwriters of Policy No. P15UC02310. *See* Case No. GJH-19-1510, ECF No. 8 ¶ 2.

Marine is completely diverse from Plaintiff. Case No. GJH-19-1510, ECF No. 1 at 3; *see also* ECF No. 27-9 (Company Information for Tokio Marine Insurance Limited filed with the Companies House). Plaintiff, however, argues in its Motion for Remand and associated Reply that Tokio Marine bears the burden of showing that it has the characteristics of a U.S. corporation such that its citizenship is determined by Tokio Marine's place of incorporation and principal place of business. ECF No. 25-1 at 18; ECF No. 28 at 9. Plaintiff further alleges that Tokio Marine has not met that burden, but rather has failed to demonstrate that U.K. private limited companies should be treated as American corporations for the purposes of diversity jurisdiction. ECF No. 25-1 at 20–21; *see also* ECF No. 28 at 9–11. Defendants respond that federal courts have uniformly treated U.K. private limited companies like American corporations for the purposes of diversity jurisdiction and that this Court should do the same. ECF No. 29-2 at 2–4 (citing *Brink's Co. v. European Grp. Ltd.*, No. HEH-20-520, 2020 WL 6829870 (E.D. Va. Nov. 20, 2020) (analyzing U.K. private limited companies under both the comparison test outlined by the 7th Circuit and the *Russell* test, and finding that U.K. private limited companies should be treated like U.S. corporations for the purposes of diversity jurisdiction)). Defendants' position is the correct one.

First, the parties have not identified, nor is the Court aware of, "a clear domestic analog" to a U.K. private limited company. *Navy Fed. Credit Union*, 972 F.3d at 354 n.5. Next, looking to the structure of the entity, the Court finds U.K. private limited companies, like Tokio Marine, are comparable to U.S. corporations for the purposes of diversity jurisdiction. A foreign entity is equivalent "in all legally material respects to a [American] corporation" if "[i]t is an entity with perpetual existence, governed by a Board of Directors, able to issue tradable shares . . . , and treated as independent of its equity investors—who are neither taxable on its profits nor liable for

its debts." *Lear*, 353 F.3d at 583. "A private limited company [under United Kingdom law] has all of these features: a separate legal identity with separate liability; at least one director and one secretary; marketable stocks, though they cannot be sold on the public exchange; required annual reports to the Companies House, the United Kingdom's equivalent of a State Corporation Commission; and no pass-through taxation." *Brink's Co.*, 2020 WL 6829870, at *6 (citing, *inter alia*, U.K. Companies Act of 2006, c. 46, pt. 1 §§ 3–4, 544; *id.* at pt. 2 § 16; L. OF INT'L TRADE §§ 145:4, 145:6, 145:8). Thus, the Court will treat U.K. private limited companies, such as Tokio Marine, as corporations for diversity purposes. This conclusion follows the lead of many of the Court's sister district courts that have held that a U.K. private limited company is an analogue to a U.S. corporation. *See Brink's Co.*, 2020 WL 6829870, at 5.[9]

Treating Tokio Marine as the equivalent of a U.S. corporation, Tokio Marine is a citizen of the United Kingdom for the purposes of diversity jurisdiction and is completely diverse from Plaintiff. Case No. GJH-19-1510, ECF No. 1 at 3.

### b.     Lloyd's Syndicate Talbot Validus Group

Plaintiff asserts, and Defendants do not contest, that Lloyd's syndicates are treated as unincorporated entities for the purposes of diversity jurisdiction, and thus the Court must determine the syndicate's citizenship by looking to the citizenship of each of the Names who are members of the syndicate. ECF No. 25-1 at 2, 13–14; ECF No. 27 at 9–10; *see also Brink's Co.*,

---

[9] *E.g.*, *201 Brands Inc. v. Canterbury of N.Z. Ltd.*, No. JWH-20-6853, 2020 WL 7773892, at *4 (C.D. Cal. Dec. 29, 2020); *EMR (USA Holdings) v. Goldberg*, No. ER-18-7849, 2019 WL 5537878, at *14 (S.D.N.Y. Oct. 25, 2019); *Century Metal Recycling Priv. Ltd. v. Dacon Logistics, LLC*, No. CSH-13-93, 2013 WL 5929816, at *3 (D. Conn. Nov. 4, 2013); *Ratajczak v. Beazley Sols. Ltd.*, No. 13-c-045, 2013 WL 2147543, at *1 (E.D. Wis. May 15, 2013); *StormWater Structures, Inc. v. Platipus Anchors, Inc.*, No. H-09-2755, 2010 WL 582554, at *1 (S.D. Tex. Feb. 11, 2010); *HFGL Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*, 264 F.R.D. 146, 147 n.2 (D.N.J. 2009); *Primus Telecomms., Inc. v. Toshiba of Eur. Ltd.*, No. 09-cv-10, 2009 WL 3064669, at *2 n.2 (E.D. Va. Sept. 22, 2009); *Novae Underwriting, Ltd. v. Cunningham Lindsey Claims Mgmt.*, No. 07-C-2008, 2008 WL 4542988, at *1 (N.D. Ill. Apr. 1, 2008); *Simon Holdings PLC Grp. of Cos. U.K. v. Klenz*, 878 F. Supp. 210, 211 (M.D. Fla. 1995).

2020 WL 6829870 at *4; *Hillen v. Lloyd's London*, No. 1:18-cv-112, 2018 WL 10501628, at *2 (E.D. Va. Mar. 26, 2018). Lloyd's Syndicate Talbot Validus Group has only ever had one member at any of the relevant times: Talbot 2002 Underwriting Capital Limited. ECF No. 27 at 10; ECF No. 27-4 ¶ 6; ECF No. 29-2 at 2; ECF No. 29-3 ¶¶ 4–5.[10] Talbot 2002 Underwriting Capital Limited, like Tokio Marine, is a U.K. private limited company. ECF No. 28-3 ("Private company limited by shares"). Thus, for the reasons discussed in relation to Tokio Marine, *see supra* §III.B.2.a, the Court will treat Talbot 2002 Underwriting Capital Limited as a corporation for diversity purposes.[11] Talbot 2002 Underwriting Capital Limited is thus a citizen of the United Kingdom for diversity purposes, making Lloyd's Syndicate Talbot Validus Group a citizen of the United Kingdom as well. Case No. GJH-19-1510, ECF No. 1 ¶ 16 ("Talbot 2002 Underwriting Capital Limited . . . is incorporated and registered in England and Wales with its principal place of business in London, England."). Lloyd's Syndicate Talbot Validus Group is completely diverse from Plaintiff because its only member, Talbot 2002 Underwriting Capital Limited is diverse from Plaintiff.

---

[10] Plaintiff points out that Defendants originally specified that Lloyd's Syndicate Talbot Validus Group only had one member for 2015, which does not mean that it only had one member in April 2019 when the operative complaint was filed or in May 2019 when the action was removed to this Court. ECF No. 28 at 8. However, Defendants, in their sur-reply, corrected this oversight by alleging that Lloyd's Syndicate Talbot Validus Group also only had one member in 2018 and 2019 and by providing a supplemental declaration to support this contention. ECF No. 29-2 at 2; ECF No. 29-3 ¶¶ 4–5. The Court will consider Defendants' supplemental allegations and declaration because it grants Defendants' Motion for Leave to File Sur-reply. Moreover, Defendants' correction is consistent with Defendants' original assertion in its Notice of Removal that Talbot 2002 Underwriting Capital Limited is "and was *at the time this action was initiated*" the sole member of Lloyd's Syndicate Talbot Validus Group. Case No. GJH-19-1510, ECF No. 1 ¶ 16 (emphasis added).

[11] Plaintiff asserts various arguments in its reply for why Talbot 2002 Underwriting Capital Limited is not the equivalent to a U.S. corporation—asserting that Talbot 2002 has various features that distinguish it from a U.S. Corporation, including only having a single share of stock—but provides no case law to support these arguments. ECF No. 28 at 12. The Court finds these unsupported arguments unpersuasive in light of the overwhelming federal court authority treating U.K. private limited corporations as equivalent to U.S. corporations for diversity purposes and in light of the Court's own analysis finding the same.

### c. Lloyd's Syndicate 382 CNA Hardy

The parties again agree that Lloyd's Syndicate 382 CNA Hardy, as a Lloyd's syndicate, is treated as an unincorporated entity for purposes of diversity jurisdiction, and thus the Court must look to the citizenship of each of the Names who are members of Lloyd's Syndicate 382 CNA Hardy to determine the citizenship of the syndicate itself. ECF No. 25-1 at 2, 13–14; ECF No. 27 at 9–10. Hardy Underwriting Limited, a U.K. private limited company, is the sole member of Lloyd's Syndicate 382 CNA Hardy. ECF No. 27 at 4–5; ECF No. 27-6 ¶ 6; Case No. GJH-19-1510, ECF No. 1 ¶ 17. Because Hardy Underwriting Limited is a U.K. private limited company, for the reasons discussed in relation to Tokio Marine, *see supra* §III.B.2.a, the Court will treat Hardy Underwriting Limited as a corporation for diversity purposes. Thus, Hardy Underwriting Limited is a citizen of the United Kingdom for diversity purposes, and, since it is the sole member of Lloyd's Syndicate 382 CNA Hardy, the syndicate is also a citizen of the United Kingdom for diversity purposes. ECF No. 27 at 4–5; ECF No. 27-6 ¶ 6; Case No. GJH-19-1510, ECF No. 1 ¶ 17. Lloyd's Syndicate 382 CNA Hardy is diverse from Plaintiff.

### d. AEGIS

According to Defendants' Notice of Removal, AEGIS "is and was at the time this action was initiated a mutual insurer incorporated under the laws of Bermuda" and "conducts business in the United States through a wholly-owned subsidiary whose principal place of business is New Jersey." Case No. GJH-19-1510, ECF No. 1 ¶ 15. Plaintiff argues that, because mutual insurers are owned by their various policyholders, *see* Case No. GJH-19-1510, ECF No. 15, the Court should determine the citizenship of foreign mutual insurance companies, like AEGIS, by looking to the citizenship of its policyholder members. ECF No. 25-1 at 21. Defendants respond that foreign mutual insurers, and consequently AEGIS, should be treated as corporations for the

purposes of diversity jurisdiction because they should be treated like domestic mutual insurers and are functionally equivalent to U.S. corporations. ECF No. 27 at 16–21. The Fourth Circuit has yet to decide whether a foreign mutual insurer should be treated as a corporation for purposes of diversity jurisdiction;[12] however, the Court finds Defendants' supporting authority persuasive and thus determines that AEGIS should be treated like a corporation for the purposes of diversity jurisdiction.

First, in accordance with *Navy Federal Credit Union*, the Court looks to see if foreign mutual insurers, such as AEGIS, have a clear domestic analogue. 972 F.3d at 345 n.5. In this case, there is such an analogue: domestic mutual insurers.[13] The Court next determines whether the domestic analogue is a corporation or an unincorporated entity. Here, the Court finds that the relevant domestic analogue, a domestic mutual insurance company, is treated as a corporation for the purposes of diversity jurisdiction. *See, e.g.*, *Stagg v. Farmers Ins. Exch.*, No. 3:15-cv-01502, 2016 WL 1725302, at *2 (D. Or. Apr. 27, 2016) ("Unlike mutual insurance companies, insurance exchanges do not have a corporate existence[.]"); *Lowe v. State Farm Mut. Auto. Ins. Co.*, No. 4:16-cv-135, 2016 WL 9223865, at *1 (N.D. Fla. Apr. 8, 2016) ("Courts have consistently

---

[12] In fact, the Court is unaware of any federal court that has discussed the citizenship of a foreign mutual insurer in the context of determining whether diversity jurisdiction exists. However, as Defendants note, both AEGIS and EIM have submitted Notices of Removal in other actions containing the same information regarding citizenship set forth in the instant Notice of Removal and have proceeded in federal court pursuant to diversity jurisdiction without the court or the other parties questioning AEGIS or EIM's citizenship. *Compare* Case No. GJH-19-1510, ECF No. 1 *with FirstEnergy Generation Corp. v. Liberty Mut. Ins. Co.*, No. 5:12-cv-02417, 2012 WL 4852258 (N.D. Ohio Sept. 12, 2012); *see also* ECF No. 27-12.

[13] Plaintiff originally argued that the Court should treat foreign mutual insurers like reciprocal insurers because both entity types are owned by their policyholders. ECF No. 25-1 at 22. Courts deem reciprocal insurers citizens of any state in which their policyholder members are citizens. *Id.* (citing, *inter alia*, *Erie Ins. Exch. v. Potomac Elec. & Power Co.*, No. DKC-14-0485, 2014 WL 1757949, at *3 (D. Md. Apr. 29, 2014) (holding that a reciprocal insurance exchange bears the citizenship of each member)). However, Defendants argued in response that reciprocal insurers are distinguishable from mutual insurers, ECF No. 27 at 17–18 (citing *Stagg v. Farmers Ins. Exch.*, No. 3:15-cv-01502, 2016 WL 1725302, at *2 (D. Or. Apr. 27, 2016) ("Unlike mutual insurance companies, insurance exchanges do not have a corporate existence; instead they are simply an unincorporated association of individuals who swap potential liabilities between themselves."). Plaintiff appears to have abandoned the reciprocal insurer comparison in its reply. *See* ECF No. 28 at 13–15.

treated mutual insurance companies as corporations for [diversity] purpose[s].”); 43 Am. Jur. 2d

Insurance § 68 (referring to mutual insurance companies as corporations); *Corporation*, Black’s

Law Dictionary (11th ed. 2019) (stating that mutual insurance companies are examples of

nonstock corporations). Plaintiff, however, disagrees with the Court’s conclusion, arguing that

mutual insurance companies are only considered corporations when they are incorporated under

state law. ECF No. 28 at 13. While this may be true, *S. Pilot Ins. Co. v. Matthews Auto Repair,*

*Inc.*, No. 1:17-cv-01207-JMS-DML, 2017 WL 7731227, at *1 (S.D. Ind. Apr. 18, 2017) (“[T]he

citizenship of a mutual insurance company turns on the corporate form it is considered to be by

applicable state law.”), Plaintiff fails to identify a single case or state statute where a mutual

insurance company is not considered a corporation under state law. Nor has this court been able

to find evidence that *any* state treats mutual insurance companies as anything other than

corporations.[14]

---

[14] *See, e.g.*, N.Y. Ins. Law § 1211 (“Every domestic mutual insurance corporation shall be organized, maintained and operated for the benefit of its members as a non-stock corporation. Every policyholder shall be a member of such corporation[.]”); Md. Code Ann., Ins. §§ 3-102, 3-103 (indicating that mutual insurers are corporations under Maryland law); N.J. Stat. Ann. § 17B:18-3 (defining a mutual insurer as an insurer incorporated in accordance with the laws of New Jersey without permanent capital stock); Fla. Stat. § 628.031 (defining a mutual insurer as “an incorporated insurer without permanent capital stock”); Cal. Ins. Code § 4010 (“A ‘mutual’ insurer is an insurance corporation without capital stock owned by its policyholders collectively[.]”); *Mut. Serv. Cas. Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548, 551 (7th Cir. 1988) (“But Country Companies overlooks the provisions of Minnesota law which provide that mutual insurance companies are incorporated under Minnesota law.” (citing Minn. Stat. Ann. § 66A.03)); *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, 566 F.3d 541, 548 (5th Cir. 2009) (“Rhode Island has defined a ‘mutual insurance company’ to ‘mean[] a corporation . . . .’” (citing R.I. Gen. Laws § 27-66-4(9))); *Hayes v. State Farm Mut. Auto. Ins. Co.*, No. 3:14-cv-182-J-20PDB, 2014 WL 12621477, at *1–*2 (M.D. Fla. May 12, 2014) (finding that the defendant was a mutual insurance company incorporated under Illinois state law”); *CMA CGM (America), LLC v. RLI Ins. Co.*, No. AW-12-3306, 2013 WL 588978, at *1 (D. Md. Feb. 13, 2013) (“Defendant Home State County Mutual Insurance Company (hereinafter Home State) is an insurance company organized under the laws of Texas and is a citizen of Texas for diversity purposes.”); *Abercrombie v. Nationwide Mut. Ins. Co.*, 999 F. Supp. 660, 661 (D. Md. 1998) (“Defendant Nationwide Mutual Insurance Company (‘Nationwide’), an Ohio corporation”); *Barnett v. Norfolk & Dedham Mut. Fire Ins. Co.*, 773 F. Supp. 1529, 1531 (N.D. Ga. 1991) (“Under Massachusetts law ‘the general principles of law relative to the powers, duties and liabilities of corporations shall apply to all incorporated domestic companies, including mutual insurance companies having members rather than stockholders.” (citing Mass. Gen. Laws. Ann., ch. 175 § 30)); *Lang v. Windsor Mount Joy Mut. Ins. Co.*, 487 F. Supp. 1303, 1304 n.3 (E.D. Pa. 1980) (“Defendant Windsor Mount Joy Mutual Insurance Company is a Pennsylvania corporation”).

Because a foreign mutual insurance company, such as AEGIS, is an analogue to a domestic mutual insurance company and domestic mutual insurers are corporations, AEGIS is considered a corporation for the purposes of diversity jurisdiction.

Having determined that AEGIS should be treated like a U.S. corporation for diversity purposes, the Court looks to AEGIS's place of incorporation and principal place of business. 28 U.S.C. § 1332. AEGIS was incorporated in Bermuda but oddly has not alleged its principal place of business. Case No. GJH-19-1510, ECF No. 1 ¶ 15. Rather, AEGIS states that it "conducts business in the United States through a wholly-owned subsidiary whose principal place of business is New Jersey." *Id.* Plaintiff is correct that AEGIS's subsidiary's principal place of business is not directly relevant to the Court's diversity jurisdiction analysis, as it is not a party to this action. ECF No. 25-1 at 23. However, because AEGIS has alleged that it *only* does business in the United States through its subsidiary, which has a principal place of business in New Jersey, the Court is left with the inevitable conclusion that AEGIS' principle place of business is not in Delaware or Washington. Thus, there is complete diversity between Plaintiff and AEGIS.

### e.      EIM

According to Defendants' Notice of Removal, EIM is, and was at the time this action was initiated, a foreign mutual insurance company. Case No. GJH-19-1510, ECF No. 1 ¶ 13. Because EIM is a mutual insurance company, as discussed with respect to AEGIS, EIM is treated as a corporation for the purposes of diversity jurisdiction and is a citizen of both its place of incorporation and principal place of business.[15] *See supra* § III.B.2.d. EIM was incorporated under the laws of Barbados and has its principal place of business in Tampa, Florida. Case No. GJH-19-1510, ECF No. 1 at 3; ECF No. 7-2 ¶ 5. Thus, EIM is a citizen of both Barbados and

---

[15] The fact that Florida has certified EIM as "an out of the country corporation authorized to transact business in the State of Florida" further supports this conclusion. ECF No. 27-13 ¶ 7; ECF No. 27-16.

Florida and is diverse from Plaintiff.

**f. Starstone Insurance SE**

Finally, Starstone Insurance SE is, and was at the time this action was initiated, a societas europaea, which, according to Defendants, is a European corporation under the corporate law of the European Union. Case No. GJH-19-1510, ECF No. 1 ¶ 18. The parties have not cited, and the Court is not aware of, any case law indicating whether a societas europaea is equivalent to a U.S. corporation for the purposes of diversity jurisdiction. However, Defendants argue a societas europaea should be treated like a U.S. corporation for the purposes of diversity jurisdiction. The Court agrees.

First, the Court looks to whether there is a "clear domestic analog" to a societas europaea. *Navy Fed. Credit Union*, 972 F.3d at 345 n.5. Defendants suggest that a U.S. corporation is the domestic analogue for a societas europaea, ECF No. 27 at 22–26, while Plaintiff does not offer a possible analogue. The Court agrees that a U.S. corporation is a plausible analogue to a societas europaea. A societas europaea has transferable shares, limited liability, and a legal personality independent from its shareholders. *See* EU Council Regulation No. 2157/2001, Preamble ¶ 13 ("The SE itself must take the form of a company with share capital[.]"); *id.* art. 1 ¶ 2 ("The capital of an SE shall be divided into shares. No shareholder shall be liable for more than the amount he has subscribed"); *id.* art. 1 ¶ 3 ("An SE shall have legal personality."). Moreover, the statute creating societas europaea imposes other requirements that are characteristic of U.S. corporations—*i.e.*, registration requirements, *id.* art. 12–16; reporting requirements; *id.* art. 61–62; requirements for shareholder meetings and shareholder voting, *id.* art. 38, 52–60, and requirements for management and oversight, *id.* art. 38–45. However, to the extent a U.S. corporation is not a "*clear* domestic analogue[,]" *Navy Fed. Credit Union*, 972 F.3d at 345 n.5

(emphasis added), the Court will apply the Seventh and Eighth Circuits' comparison test to determine whether Starstone Insurance SE is equivalent to a U.S. corporation for the purposes of diversity jurisdiction.

Applying the comparison test, Starstone Insurance SE shall be treated like a U.S. corporation for diversity purposes. As noted by the Seventh Circuit, when comparing a foreign entity to a U.S. corporation, the relevant characteristics include whether the entity: "[has] perpetual existence, [is] governed by a Board of Directors, [is] able to issue tradable shares . . ., and [is] treated as independent of its equity investors—who are neither taxable on its profits nor liable for its debts." *Lear*, 353 F.3d at 583. Here, Starstone has "perpetual existence without regard to death, dissolution, or withdrawal of its individual shareholders." ECF No. 27-26 ¶ 15. Starstone "is governed by a Board of Directors" and "is able to issue shares that are transferable, subject to certain restrictions." *Id.* ¶¶ 16, 18; ECF No. 27-27. Finally, Starstone "has a corporate existence separate from that of its shareholders." ECF No. 27-26 ¶ 12. Specifically, (1) Starstone "has the power to enter into contracts, own property, transact business, and sue and be sued in its own name and right[,]" *id.* ¶ 14; (2) Starstone "is taxed . . . at a corporate level, and [Starstone's] shareholders are not subject to taxation . . . on [Starstone's] revenues or profits[,]" *id.* ¶ 17; and (3) Starstone's "[s]hareholders are not liable for [Starstone's] debts, and the potential liability of [Starstone's] shareholders is limited to a shareholder's capital stake in the company[,]" *id.* ¶ 13. Therefore, Starstone Insurance SE has all the features of a U.S. corporation and should be treated as such for the purposes of diversity jurisdiction. Consequently, Starstone Insurance SE is a citizen of its place of incorporation and principal place of business. Starstone Insurance SE is incorporated under the laws of the European Union and is registered in Lichtenstein. ECF No. 27-26 ¶ 6. Starstone Insurance SE had a principal place of business in London, England until

2017, at which time it moved its principal place of business to Schaan, Liechtenstein, where it remains today. *Id.* Thus, Starstone Insurance SE is diverse from Plaintiff.

***

Because all Defendants are diverse from Plaintiff, there is complete diversity. The Court denies Plaintiff's Motion for Remand.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand, ECF No. 25, is denied and Defendants' Motion for Leave of Court to File Sur-Reply to Plaintiff's Reply in Further Support of Plaintiff's Motion to Remand, ECF No. 29, is granted. A separate Order shall issue.

Date: <u>June    21, 2021 </u>                                           /s/_____
                                                                                 GEORGE J. HAZEL
                                                                                 United States District Judge